THE LANIER LAW FIRM, P.C.
Christopher D. Banys   (SBN: 230038)
cdb@lanierlawfirm.com
Daniel W. Bedell        (SBN: 254912)
dwb@lanierlawfirm.com
Carmen M. Aviles       (SBN: 251993)
cma@lanierlawfirm.com
Daniel M. Shafer        (SBN: 244839)
dms@lanierlawfirm.com
2200 Geng Road, Suite 200
Palo Alto, CA  94303
Telephone:    (650) 322-9100
Facsimile:     (650) 322-9103

Attorneys for Defendant
INNOVA PATENT LICENSING, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROOFPOINT, INC., | Case No.  5:11-CV-02288-LHK |
| Plaintiff, | **INNOVA PATENT LICENSING INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO INNOVA'S MOTION TO DISMISS** |
| v. | |
| INNOVA PATENT LICENSING, LLC, | Hon. Lucy H. Koh |
| Defendant. | **[FRCP 12(b)(1); FRCP 12 (b)(2)]** |
| | **DATE:  October 20, 2011**<br>**TIME:   1:30 P.M.**<br>**COURTROOM:  4, 5TH FLOOR** |

///

## I. INTRODUCTION

Proofpoint cannot establish subject matter jurisdiction because it cannot show that there is an actual controversy between the parties - there is no adverse legal interest of sufficient immediacy to bring this action under the declaratory power of the court. Proofpoint argues that because InNova has sued some of its customers in the Texas action it has "clouded" its products but offers no support for its position. Proofpoint also argues that there is adverse legal interest between the parties based on the fact that InNova has accused its customers of direct infringement establishing an implied allegation of indirect infringement against Proofpoint. But Proofpoint has failed to plead that InNova can arguably accuse it of indirect infringement of a method claim. Proofpoint never alleges in the FAC that InNova has accused it of performing the method claim.

Proofpoint's argument based on indemnity obligations is equally unpersuasive. Proofpoint argues the indemnity obligations are enough to establish subject matter jurisdiction but its argument is unsupported by case law. Moreover, if there were indemnity obligations, Proofpoint has failed to plead or come forth with specific evidence.

Proofpoint's attempt to establish personal jurisdiction over InNova, a Texas company, is even more tenuous. It cannot show that InNova's contacts are "continuous and systematic" with this forum or that there is a substantial connection with this forum. Thus, Proofpoint cannot establish personal jurisdiction over InNova.

But even if the Court found jurisdiction over InNova, the declaratory action should be dismissed. InNova filed a case in the Eastern District of Texas ("the Texas action") over a year ago with over twenty defendants, two of which are Proofpoint customers – American International Group ("AIG") and Wells Fargo.[1] Efficiency and judicial economy warrant dismissing this action and letting the Texas action run its course. Several motions to dismiss are pending, a Markman hearing on claim construction is scheduled for September 7, 2011, and the trial is scheduled for March 5, 2012. Any

---

[1] Rent-A-Center was dismissed from the case on July 14, 2011.

finding of indirect infringement requires a finding of direct infringement and that determination will occur in Texas much faster than here.

## II.   ARGUMENT

Plaintiff incorrectly informs the Court that InNova has applied the *pre-MedImmune* "reasonable apprehension" of suit test in an obvious attempt to draw attention away from the meritorious arguments that InNova has put forth. In fact, InNova does not state in its brief the words "reasonable apprehension" once. And moreover, it is clear from InNova's case law citations that its references are to *post-MedImmmune* cases. And while the Supreme Court rejected the "reasonable apprehension of suit" test as the standard for determining declaratory judgment jurisdiction in patent disputes, a reasonable apprehension on the part of the declaratory judgment plaintiff that it would face an infringement suit is nonetheless a factor to be considered in the more general totality of "all the circumstances" test to establish a justiciable controversy. *Ours Technology, Inc. v. Data Drive Thru, Inc.* 645 F.Supp.2d 830, 834 (N.D. Cal. July 28, 2009) citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 132, n. 11 (2007). Thus, an Article III case or controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.,* 549 U.S. at 127 (2007).

### A.  Subject Matter Jurisdiction

**1.   Suing customers for direct infringement of a method claim based on their use of a product does not automatically implicate the supplier's product.**

Proofpoint has failed to plead that it has arguably been accused of indirect infringement of InNova's method claim. Proofpoint's only support is to *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372 (Fed. Cir. 2007) but that case is distinguishable from this action and nothing in *SanDisk Corp. v. STMicroelectronics, Inc* gives rise to the interpretation that accusing products is enough to establish a case or controversy. In fact, quite the opposite is true. In *SanDisk Corp. v. STMicroelectronics, Inc* there was a history of negotiations between the parties for cross-licensing of the 14 patents that were at issue in the

1  declaratory judgment. Several communications, meetings, exchange of infringement and non-
2  infringement analysis between the parties had transpired before the declaratory judgment was
3  filed. In fact, the conduct was so extreme that the court found that it was exactly the kind that
4  the Declaratory Judgment was intended to obviate. *SanDisk Corp. v. STMicroelectronics,*
5  *Inc.,* 480 F.3d 1372, 1383 (Fed. Cir. 2007) ("ST is engaging in the kinds of "extra-judicial
6  patent enforcement with scare-the customer- and- run tactics" that the Declaratory Judgment
7  Act was intended to obviate.") InNova, on the other hand has not contacted Proofpoint prior
8  to the filing of this declaratory action by any means, has not met with Proofpoint employees,
9  nor has it exchanged any written communications in an attempt to negotiate a license with it.
10 Proofpoint's only complaint is that InNova has sued its customers in a Texas action.

**2. Indirect infringement does not arise simply by suing customers for direct infringement of a method claim and indemnity obligations are not enough to establish subject matter jurisdiction.**

13 Proofpoint attempts to establish an underlying adverse legal interest based on the
14 patent infringement claims for direct infringement against its customers in the Texas action.
15 But indirect infringement against the supplier does not automatically arise as Proofpoint
16 leads the Court to believe. *Arris Group, Inc. v. British Telecommunications plc,* 639 F. 3d at
17 1375-1376 ("when a holder of a patent with method claims accuses the supplier's customers
18 of direct infringement based on their use of the supplier's product in the performance of the
19 claimed method, an implicit assertion of indirect infringement by a supplier *may* arise").
20 Proofpoint has not pled that InNova has accused it of performing the method claim. *See*
21 FAC ¶ 7; *also see* Ex. B to FAC (InNova's First Amended Complaint, Claim 1). Nor has
22 Proofpoint pled any facts showing that InNova has put Proofpoint's conduct at issue. *See*
23 FAC ¶¶ 7, 10; *Ours Technology Inc. v. Data Drive Thru Inc.,* 645 F.Supp.2d 830, 839 (Fed.
24 Cir. 2009) ("The Federal Circuit held there was no indication that Microchip had contributed
25 to or induced infringement by its customers, because there was no evidence that Microchip's
26 technology could not be used without infringing Chamberlain's patent or that Microchip had
27 the required level of intent to cause and encourage the alleged infringement."); *Id*. at 837
28 ("There is no evidence in the record that OTI instructed the OEMs how to manufacture the

1  complete data cable products with all of the components required to induce the direct
2  infringement of DDT's patent"); *also see DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1306
3  (Fed. Cir. 2006) (*en banc*) ("the inducer must have an affirmative intent to cause direct
4  infringement … inducement requires evidence of culpable conduct, directed to encouraging
5  another's infringement, not merely that the inducer had knowledge of the direct infringer's
6  activities").

7  Moreover, even if there is a cognizable showing of an adverse legal interest as to
8  indirect infringement against Proofpoint the Court should decline to hear this case,
9  "[b]ecause any induced or contributory infringement requires a finding of direct
10 infringement, *see* 35 U.S.C. §271 (b) and (c), it is sensible, more appropriate, and more
11 convenient to address the allegations in the Texas suit first." *Ours Tech.,* 645 F.Supp.2d at
12 840.

13 Proofpoint also contends that because it has indemnity obligations to its customers
14 that alone is enough for subject matter jurisdiction.  It cites to *Arris Group, Inc. v. British*
15 *Telecommunications plc,* 639 F. 3d 1368, 1375 (Fed. Cir. 2011) for that proposition.  But
16 *Arris Group, Inc,* makes it clear that while economic injury alone may confer standing in
17 cases in some government actions, the court has never held "that economic injury alone is
18 sufficient to confer standing in patent cases seeking a declaratory judgment." *Arris Group,*
19 *Inc. v. British Telecommunications plc,* 639 F. 3d 1368, 1375, 1374 (Fed. Cir. 2011).  Indeed
20 the court states that there must be an adverse legal interest that "requires a dispute as to a legal
21 right – for example, an underlying legal cause of action that the declaratory defendant could
22 have brought or threatened to bring." *Id*.

23 Moreover, Proofpoint has failed to establish that it has indemnity obligations to
24 customers that have been accused in the Texas action.  As Proofpoint points out, the court was
25 not convinced in *Ours Technology Inc. v. Data Drive Thru Inc,* of the declaratory judgment
26 plaintiff's indemnity obligations.  But Proofpoint omitted from its citation to *Ours*
27 *Technology* the reason why the court was not convinced of the indemnity obligations.

28

INNOVA'S REPLY TO PLAINTIFF'S OPPOSITION
TO INNOVA'S MOTION TO DISMISS      4
CASE NO: 5:11-CV-002288-LHK

> "While the Federal Circuit held that an adverse legal interest could perhaps be created if Microchip had indemnified at least one of its customers that was allegedly infringing Chamberlain's patent, the lack of an indemnity agreement between OTI and its "customers" in the United States fails to carry any weight, let alone enough weight to create an adverse legal interest. *See Microchip Technology Inc. v. Chamberlain Group, Inc.* 441 F.3d 936, 944 (""Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit. Thus, Microchip has no legal right to 'clear the air'")

*Ours Technology Inc. v. Data Drive Thru Inc.,* 645 F.Supp.2d 830, 839 (Fed. Cir. 2009). Like in *Ours Technology Inc.* and *Microchip Technology Inc.*, Proofpoint has failed to produce any indemnity agreement. And only alleges that "the Texas Action has *triggered indemnity requests by Proofpoint customers.*" (Dkt. 14 ¶ 7) (emphasis added). But Proofpoint fails to allege that it actually owes any valid indemnity obligations to any Texas Defendant. *See* FAC ¶ 13 and ¶ 27. Simple requests for indemnity are not enough.

### 3. The "customer-suit" exception suit favors declining jurisdiction of the declaratory action.

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Microchip Technology Inc. v. United Module Corp.,* 2011 WL 2669627 *3 (N.D. Cal. July 7, 2011) (Koh, J.). The customer suit exception is an exception to the first-filed action. *Id.* at 5. The customer suit exception involves the scenario in which "[t]he first is the 'customer action', where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Id.* citing *Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989). In evaluating the customer-suit exception, "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Id.* citing *Katz v. Siegler,* 909 F.2d 1459, 1463 (Fed.Cir.1990). But the guiding principles of the customer-suit exception are efficiency and judicial economy. *Microchip Technology, Inc.,* 2011 WL 2669627 *5 (N.D.

1 Cal. July 7, 2011) ("The Federal Circuit has made clear that the 'guiding principles' of the
2 customer-suit exception are efficiency and judicial economy.)

3 Like the *Microchip Technology Inc. v. United Module Corp* case, the Court should
4 decline subject matter jurisdiction here because of the Texas action. For instance, the parties
5 of the Texas action are not the same as in this declaratory action, adjudicating this declaratory
6 action will not resolve the Texas action, and not all the parties in the Texas action are before
7 this Court. *Id.* ("resolution of this action would not "resolve all charges against customers"
8 in the first-filed action . . . complete relief is more difficult in this case, at least at this time,
9 because numerous defendants in the Texas Case are not before this Court"). Thus, the
10 guiding principles of efficiency and judicial economy support application of the first-to-file
11 rule.

### B. Personal Jurisdiction

13 The alleged facts that Proofpoint points to in the FAC do not support hailing InNova
14 into this forum. For example, Proofpoint alleges that Mr. Uomini pays maintenance fees for
15 the '761 patent. But that hardly is enough to establish personal jurisdiction over InNova.
16 Proofpoint also generally pleads that Mr. Uomini prepared for litigation in California but
17 offers no specific facts to support the allegation and fails to explain how such an allegation
18 supports personal jurisdiction.

19 Proofpoint also attempts to establish general jurisdiction over InNova. But none of the
20 alleged facts asserted in the FAC establish "continuous and systematic" contacts with this
21 forum. In fact, many alleged facts are directed towards the patentee, not InNova, from years
22 ago that have nothing to do with InNova whatsoever. And so because Proofpoint cannot
23 establish general jurisdiction over InNova, it must therefore establish some theory to hail
24 InNova into this forum.

25 The two theories Proofpoint attempts to put forth in its FAC– agency theory and alter-
26 ego – fail to establish general jurisdiction over InNova. Proofpoint does not plead the factors
27 to support alter-ego in the FAC: (1) there is a unity of interest and ownership that the
28 individuality, or separateness, of the said person and the corporation has ceased, and (2) an

1 adherence to the fiction of the separate existence of the corporation would sanction a fraud or
2 promote injustice. *Firstmark Capital Corp. v. Hempel Fin. Corp.,* 859 F.2d 92, 94 (9th Cir.
3 1988). Proofpoint, likewise fails to establish its agency theory because it has not shown that
4 InNova conducts substantial activities in this forum.

5 Additionally, Proofpoint fails to establish specific jurisdiction. Proofpoint's claim that
6 InNova purposefully directed its activities with intent towards residents of this forum and that
7 the brunt of the effects are felt in this judicial district is disingenuous. First, the Texas action
8 named over 20 defendants, the majority of which are outside this judicial district. Suing
9 Proofpoint's customers in Texas is not directing its activities at this forum. InNova did not
10 aim its activities at this forum's residents nor is the brunt of the effects felt in this forum.

11 Furthermore, Proofpoint's claim for declaratory action does not arise out of or relate to
12 InNova's activities in this forum. The only alleged activity Proofpoint points to is InNova
13 naming defendants in an action in another state that are California residents. But naming
14 defendants in another action in another state has nothing to do with InNova's activities in this
15 state.

16 Finally, even if the first two prongs of specific jurisdiction are met, the Court should
17 decline to hear this action because it would not be reasonable or fair. The first-to-file rule
18 should be observed because the customer-suit exception does not apply. The Texas action is
19 near completion with a Markman hearing on claim construction scheduled for September 7,
20 2011, and trial is set for March 5, 2012. In addition, there are several motions to dismiss that
21 have already been filed. Judicial economy, efficiency, and a quick resolution to this matter
22 warrants the Court to decline jurisdiction over this matter.

23 **III.  CONCLUSION**

24 Proofpoint has failed to establish a substantial controversy, between the
25 parties having adverse legal interests, of sufficient immediacy and reality to warrant the
26 issuance of a declaratory judgment. Nor has Proofpoint established personal jurisdiction
27 over InNova. Thus, InNova respectfully request the Court dismiss this declaratory action
28 with prejudice.

| | |
|---|---|
| 1   Dated: August 31, 2011 | Respectfully Submitted, |
| 2 | */s/ Carmen M. Aviles* |
|   | Carmen M. Aviles |

THE LANIER LAW FIRM, P.C.
Christopher D. Banys    SBN: 230038  (CA)
Daniel W. Bedell          SBN: 254912  (CA)
Carmen M. Aviles         SBN: 251993  (CA)
Daniel M. Shafer          SBN: 244839  (CA)
The Lanier Law Firm, P.C.
2200 Geng Road, Suite 200
Palo Alto, CA 94303
Tel: (650) 322-9100
Fax: (650) 322-9103
cdb@lanierlawfirm.com
dwb@lanierlawfirm.com
cma@lanierlawfirm.com
dms@lanierlawfirm.com

INNOVA'S REPLY TO PLAINTIFF'S OPPOSITION
TO INNOVA'S MOTION TO DISMISS     8
CASE NO: 5:11-CV-002288-LHK

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 31st day of August, 2011.

*/s/ Vicki Comer*
Vicki Comer