UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PROOFPOINT, INC., | Case No.: 5:11-CV-02288-LHK |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| INNOVA PATENT LICENSING, LLC, | |
| Defendant. | |

Plaintiff Proofpoint, Inc. ("Proofpoint") brings this action against InNova Patent Licensing, LLC ("InNova") seeking declaratory judgment of non-infringement and invalidity of United States Patent No. 6,018,761 (the "'761 Patent"). InNova moves to dismiss for lack of subject matter jurisdiction and personal jurisdiction. Because the Court finds the motion appropriate for decision without oral argument, the October 20, 2011 motion hearing and Case Management Conference are VACATED. For the reasons below, the Court GRANTS the motion to dismiss for lack of subject matter jurisdiction without prejudice.[1]

## I. BACKGROUND

---

[1] As the complaint is dismissed for lack of subject matter jurisdiction, the Court does not reach the issue of personal jurisdiction. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431(2007) ("A federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'") (internal citations omitted).

1

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

InNova is the owner of the '761 Patent, which claims methods related to email spam filtering. Proofpoint makes and sells email security products and services. *See* ECF No. 14 (First Amended Complaint) ("FAC") ¶ 1. On July 10, 2010, InNova filed an action in the Eastern District of Texas, Civil Action No. 2:10-cv-251-DF-CE (the "Texas Action") alleging infringement of the '761 Patent. FAC ¶ 2. In its First Amended Complaint, InNova named twenty-nine defendants, ten of which supply allegedly infringing email products and services, and nineteen of which are customers of those suppliers. *See id*; First Amended Complaint at ¶ 39, ECF. No. 378, *Inova Patent Licensing, LLC v. Alcatel-Lucent Holding, Inc. et al.* (E.D. Tex. No. 2:10-CV-251-DF-CE filed March 21, 2011) (the "Texas Action Complaint").[2] InNova did not name Proofpoint as a defendant in the Texas Action. FAC ¶ 2. However, InNova alleged that three of Proofpoint's customers, AIG, Rent-A-Center, Inc., and Wells Fargo, infringe the '761 Patent by using one or more Proofpoint products. FAC ¶ 7.

On June 23, 2011, Proofpoint filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, in order "to protect its email security products and services…from…claims that [they] infringed the '761 Patent." *Id*. ¶ 7. Proofpoint asserted that by suing Proofpoint's customers, InNova had contended that Proofpoint's products "themselves are infringing products." *Id*. In addition, Proofpoint alleged that the Texas Action had triggered indemnity requests from its customers and injured Proofpoint's efforts to market and sell its products. *Id*. ¶ 10. Proofpoint therefore sought a declaratory judgment that the '761 Patent is "invalid and not infringed by Proofpoint." *Id*. ¶ 1.

---

[2] A court may consider certain materials—"documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"—without converting a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Proofpoint's First Amended Complaint refers extensively to the Texas Action and the allegations contained within the Texas Action Complaint. The Court will therefore consider the Texas Action Complaint and publicly available docket entries in that case incorporated by reference, or alternatively, subject to judicial notice. *See id.* (Facts are judicially noticable if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.").

## II.  LEGAL STANDARD

### A. Subject Matter Jurisdiction

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests the subject matter jurisdiction of the court. *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). The plaintiff bears the burden of establishing the court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n. 2; *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979).  Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. *Thornhill*, 594 F.2d at 733.  Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n. 2 (internal citations omitted).

### B. The Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  A party seeking to base subject matter jurisdiction on the Declaratory Judgment Act bears the burden of showing an "actual controversy." *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007).  Jurisdiction is proper only where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Md. Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)).  Under the "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc.*, 549 U.S. at 136 (internal citations omitted).

As this Court has explained, the Supreme Court's decision in *MedImmune* "changed the landscape for declaratory judgment jurisdiction in patent cases." *Ours Tech., Inc. v. Data Drive Thru, Inc.*, 645 F. Supp. 2d 830, 835 (N.D. Cal. 2009). Prior to *MedImmune*, the Federal Circuit generally required that a declaratory judgment plaintiff in a patent dispute demonstrate: "(1) conduct by the patentee that created a 'reasonable apprehension' of suit on the part of the declaratory judgment plaintiff and (2) present activity by the declaratory judgment plaintiff that could constitute infringement or 'meaningful preparation' to conduct potentially infringing activity." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). Although *MedImmune* requires courts to eschew bright-line rules for exercising declaratory jurisdiction, numerous decisions have found that the factors included in the Federal Circuit's previous two-part test remain relevant to the "all the circumstances" analysis. *See, e.g.*, *id.* ("Proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy."); *Ours Tech., Inc.*, 645 F. Supp. 2d at 835 ("The issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate.") (citing *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007)). Most recently, the Federal Circuit has held that a plaintiff seeking declaratory judgment under *MedImmune* must show "(1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 653 F.3d 1329, slip op. at 26 (Fed. Cir. July 29, 2011).

### III. DISCUSSION

**A.   Proofpoint's Factual Allegations Do Not Establish the Existence of an "Actual Controversy" Between Proofpoint and InNova**

Proofpoint's complaint is short on facts explaining its relationship to InNova or the '761

4

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

Patent. Essentially, Proofpoint argues that declaratory jurisdiction is appropriate because (1) InNova has asserted the '761 Patent against twenty-nine defendants in the Texas Action, (2) three of those defendants are alleged to have infringed the '761 Patent by "using" Proofpoint products, triggering indemnity requests by Proofpoint's customers and creating a "reasonable apprehension" of suit against Proofpoint, and (3) uncertainty over the scope of the '761 Patent has injured Proofpoint's efforts to sell its products. *See* FAC ¶ 11, 7.

### 1. Proofpoint Has Failed to Allege That InNova Engaged in any Affirmative Acts Directed at Proofpoint

In order to establish an "actual controversy" based on enforcement activity by a patentee, the pleadings must show that the patentee engaged in affirmative acts directed specifically at the party seeking declaratory judgment. *Ass'n for Molecular Pathology*, 653 F.3d 1329, slip op. at 35. In *Ass'n for Molecular Pathology*, an assortment of medical organizations, researchers, genetic counselors, and patients sought a declaratory judgment regarding the validity and infringement of patents related to genetic testing for breast cancer. The defendant patentee had asserted its right to preclude others from engaging in such testing "through personal communications, cease-and-desist letters, licensing offers, and litigation, the result of which was the widespread understanding that one may engage in … testing at the risk of being sued for infringement liability." *Id*. at 21 (internal citations omitted). The District Court found that under *MedImmune*, the defendant's conduct was sufficient to warrant declaratory jurisdiction over the claims brought by all plaintiffs.

The Federal Circuit disagreed, holding that jurisdiction was appropriate only where "affirmative acts" by the patentee had been "directed at specific Plaintiffs." *Id.* at 35 (citing *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (jurisdiction was proper where, prior to the declaratory judgment action, the parties had engaged in numerous licensing negotiations during which the defendant sought a right to a royalty under its patents and offered a comprehensive analysis of the plaintiff's allegedly infringing activity)). The court concluded that a plaintiff from whom the defendant had previously sought a royalty had standing under the Declaratory Judgment Act, but the others did not. *Id.*

5

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

Here, Proofpoint has not asserted that it had *any* contact with InNova prior to bringing suit. The complaint does not indicate that InNova claimed a right to a royalty from Proofpoint, sent Proofpoint a cease-and-desist letter, or communicated with Proofpoint's employees. Simply put, Proofpoint does not allege that InNova engaged in any "affirmative act" related to the enforcement of the '761 Patent that was "directed" at Proofpoint. *Id*.

### 2. The Texas Action and Subsequent Indemnity Requests Do Not Create an Actual Controversy

"Where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).

The plaintiff in *Arris Group* manufactured equipment used in Voice over Internet Protocol (VoIP) telephone services. The defendant patentee owned method patents related to VoIP, and sent a letter to one of the manufacturer's customers accusing the customer of patent infringement. The patentee's correspondence with the customer "specifically and repeatedly identified [the manufacturer's technology] used in [the customer's] network as embodying numerous elements and performing numerous method steps of the asserted claims." *Id*. at 1372. The customer then demanded indemnification from the manufacturer. *Id.* Subsequently, the patentee held joint licensing negotiations with both the manufacturer and the customer. *Id*.

After licensing negotiations broke down, the manufacturer sought a declaratory judgment regarding the validity and infringement of the asserted patents. The Federal Circuit noted that although the manufacturer had not been specifically accused of infringement, the patentee's "extensive focus on [the manufacturer's] products in its infringement contentions implies that [the manufacturer's] products are being used as a "material part" of the allegedly infringed invention— one of the required elements of contributory infringement under 35 U.S.C. § 271(c)." *Id*. at 1378.

6

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

1  The court also found it relevant that prior to bringing the declaratory judgment action, the
2  manufacturer had been "directly and substantially involved in [the patentee's] infringement and
3  licensing negotiations." *Id*. The court therefore concluded that there was an actual controversy
4  between the manufacturer and the patentee concerning the manufacturer's liability for "at least,
5  contributory infringement." *Id*. at 1378.

6  Here, as in *Arris*, InNova specifically referred to Proofpoint products in its infringement
7  allegations against Proofpoint's customers. *See, e.g.*, Texas Action Complaint ¶ 39 ("On
8  information and belief, Defendant American International Group, Inc. has and/or is now infringing
9  the '761 Patent…by using email spam filtering products…including, without limitation, Proofpoint
10 products and/or services."). However, as discussed above, InNova has made no contact with
11 Proofpoint, let alone "directly and substantially involved" Proofpoint in any infringement-related
12 negotiations. *Compare Arris Group*, 639 F.3d at 1378.

13 Moreover, Proofpoint has not shown that InNova's infringement allegations create a
14 "reasonable apprehension" of suit against Proofpoint. The Texas Action Complaint alleges that
15 Proofpoint's customers infringe InNova's patent by "*using* email spam filtering
16 products…including, without limitation, Proofpoint products and/or services." Texas Action
17 Complaint ¶ 39 (emphasis added). Proofpoint does not assert that it "uses" its products in a manner
18 that could be alleged to infringe the '761 Patent, but rather that it "makes, sells and offers" such
19 products for sale. FAC ¶ 7. Neither Proofpoint nor InNova has alleged that the mere making or
20 selling of Proofpoint's products is unlawful. Furthermore, the only allegations in the Texas Action
21 Complaint that directly implicate Proofpoint – those against Proofpoint's customer Rent-A-Center,
22 Inc.[3] – were dismissed with prejudice by joint motion. *See* ECF No. 483, Texas Action Docket
23 (Order Granting Joint Motion to Dismiss Rent-A-Center, Inc. With Prejudice). Rather than
24 establish a controversy of "sufficient immediacy and reality," *MedImmune*, 549 U.S. at 127, the
25 fact that InNova named ten supplier defendants in the Texas Action but did not include Proofpoint,

---

[3] InNova alleged that Rent-A-Center, Inc. was liable for "actively inducing Proofpoint to use Proofpoint's email service to filter Rent-A-Center, Inc.'s spam email thereby infringing the '761 patent." Texas Action Complaint ¶ 61.

7

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

and then dismissed the only claims in which Proofpoint was directly accused indicates that InNova may not intend to bring an action against Proofpoint at all.

Furthermore, Proofpoint has not alleged that its technology could not be used without infringing the '761 Patent, nor that it had the requisite knowledge or intent for indirect infringement. *See Ours Tech., Inc.*, 645 F. Supp. 2d at 839 (N.D. Cal. 2009) ("The Federal Circuit held there was no indication that Microchip had contributed to or induced infringement by its customers, because there was no evidence that Microchip's technology could not be used without infringing Chamberlain's patent or that Microchip had the required level of intent to cause and encourage the alleged infringement.") (citing *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 944 (Fed. Cir. 2006)).[4] Thus, while the specter of indirect liability weighs in Proofpoint's favor, on these facts, the Court cannot find that there is a "controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement." *Arris Group, Inc.*, 639 F.3d at 1375.

Proofpoint's claim that the Texas Action triggered indemnity requests is also insufficient to warrant the Court's jurisdiction over this action. Although *Arris* noted that indemnity obligations *could* establish an "actual controversy," the court declined to reach the indemnification issue in finding jurisdiction proper. *See id.* at 1375. The other courts to address the issue have put little faith in mere allegations of indemnity obligations. *See Ours Tech., Inc.*, 645 F. Supp. 2d at 839 ("The court has been provided with no agreement or other written document evidencing a legal basis for the defendants to have been indemnified by OTI… the lack of an indemnity agreement between OTI and its 'customers' in the United States fails to carry any weight, let alone enough weight to create an adverse legal interest."); *Microchip Tech. Inc.*, 441 F.3d at 944 ("Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit. Thus, Microchip has no legal right to 'clear the air.'"). In this case, Proofpoint has not alleged the existence of a valid agreement nor described its supposed obligations; it has simply indicated that

---

[4] To establish contributory infringement, a patent owner must show: "(1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

8

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

the Texas Action has spawned indemnity "requests." FAC ¶ 7. Without more, allegations of indemnity requests are not enough to find a "substantial controversy … of sufficient immediacy and reality." *MedImmune*, 549 U.S. at 127.

### 3. Alleged Injury to Proofpoint's Marketing and Sales Efforts Does Not Create an Actual Controversy

Finally, Proofpoint argues that the Texas Action and the threat of litigation against "other customers" will injure its "efforts to market and sell its products and services." FAC ¶ 10. While the Court agrees that the Texas Action may negatively impact Proofpoint's sales prospects, such "economic" concerns do not establish an adverse *legal* interest sufficient to justify declaratory relief. *See Arris Group*, 639 F.3d at 1374 (Fed. Cir. 2011) ("An 'adverse legal interest' requires a dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring … economic injury alone is insufficient to create standing."); *Ours Tech., Inc.*, 645 F. Supp. 2d at 840 ("Because OTI's interest in indemnifying these U.S. retailers, as best the court can discern, is to preserve its customer base, DDT is correct that OTI's interest in this action is largely—if not exclusively—economic."); *Microchip Tech. Inc.*, 441 F.3d at 943 ("At most, Microchip had only an economic interest in clarifying its customers' rights under Chamberlain's patents, which may have facilitated the sale of Microchip's products. Microchip perhaps would economically have benefited if its customers had no fear of suit by Chamberlain. Such an economic interest alone, however, cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act.").

## B.   The Existence of the Texas Action Counsels Against This Court's Assertion of Jurisdiction

Even if the Court were to find that declaratory jurisdiction *might* be proper, it would nevertheless be prudent to decline jurisdiction given the pendent Texas Action. Under the first-to-file rule, the court has discretion to "decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *See Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir.1982). As this Court has explained, the first-filed rule "promotes judicial efficiency and prevents the risk of inconsistent decisions that would arise from

9

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

multiple litigations of identical claims," and "thus should not be disregarded lightly." *Meru Networks, Inc. v. Extricom, Ltd.*, 2010 U.S. Dist. LEXIS 90212, *2-3 (N.D. Cal. Aug. 31, 2010) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). The application of the rule requires consideration of "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Microchip Tech., Inc. v. United Module Corp.*, CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011). The trial court may also "consider the 'convenience factors' found in a transfer analysis under 28 U.S.C. § 1404(a)." *Micron Tech., Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 902-03 (Fed. Cir. 2008). Those factors include "the convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice." *Id*. at 904-05.

Although the first-filed rule is not *clearly* applicable here because Proofpoint is not a party to the Texas Action, *but see Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 959 (N.D. Cal.2008) (stating that "exact identity [of parties] is not required to satisfy the first-to-file rule"), the focus on judicial efficiency that underlies both the first-filed rule and the transfer analysis plainly supports the Court's decision to decline jurisdiction.[5] The Texas Action was filed

---

[5] The Court does not agree with Proofpoint that this case should come under the "customer-suit" exception to the first-to-file rule. *See* ECF No. 19 (Opp. to Mot. to Dismiss) at 7. The exception applies "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). Under such circumstances, the first-filed rule gives way to the "manufacturer's presumed greater interest in defending its actions against charges of patent infringement." *Id*. In evaluating the customer-suit exception, "the primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *See Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). The "guiding principles" of the customer-suit exception are efficiency and judicial economy. *Microchip Tech., Inc. v. United Module Corp.*, CV-10-04241-LHK, 2011 WL 2669627, *5 (N.D. Cal. July 7, 2011) (citing *Tegic Communications Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)). In the instant case, resolving Proofpoint's declaratory judgment claims would not "resolve all charges" against the customers in the Texas Action because Proofpoint is not the only supplier of allegedly infringing technology. *See id*. at *5 ("Plaintiffs do not suggest that SST is the only manufacturer of the relevant technology. Thus, resolution of this action would not 'resolve all charges against customers' in the first-filed action.") (citing *Kahn*, 889 F.2d at 1081). Asserting jurisdiction over Proofpoint's claim therefore would not be in the interest of efficiency or judicial economy.

10
Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

on July 10, 2010, nearly a year before the initiation of this declaratory judgment action. *See* FAC ¶ 2. It involves the same patent at issue here. *See* Texas Action Complaint at 7-19.  Many of the defendants, the majority of whom are multinational corporations represented by major law firms, have asserted claims of non-infringement and invalidity similar to those advanced by Proofpoint. *See, e.g.*, ECF No. 414, Texas Action (American International Group's Answer and Counterclaim for Patent Infringement) (filed April 22, 2011).  Because a claim construction ruling is pending in the Texas Action, this Court's assertion of jurisdiction would risk a conflicting determination of the scope of the '781 Patent.  Given the substantial similarity of the issues and the considerable energy already invested by the District Court for the Eastern District of Texas, it would not be in the interest of justice or judicial economy for this Court to entertain Proofpoint's claim.  *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) ("Having the same magistrate judge handle this and the co-pending case involving the same patent would be more efficient than requiring another magistrate or trial judge to start from scratch."); *Aliphcom v. Wi-LAN Inc.*, 10-CV-02337-LHK, 2010 WL 4699844, *3 (N.D. Cal. Nov. 10, 2010) (granting transfer of the first-filed case to the second-filed forum because "the risk of inconsistent judgments and waste of judicial resources must outweigh the equitable concern of [the declaratory judgment plaintiff's] convenience in litigating its claim."), *aff'd*, *In re Aliphcom*, MISC. NO. 971, 2011 WL 4630923 (Fed. Cir. Feb. 9, 2011).

Instead, the Court encourages Proofpoint to move to intervene in the Texas Action or bring a separate action for declaratory judgment in the Eastern District of Texas and seek to relate that claim to the Texas Action.[6]  Proofpoint has not argued that the Eastern District of Texas is an inconvenient forum in which to bring its claim, nor that it would be prejudiced by intervening in the Texas Action at this stage in the litigation.  Moreover, as discussed above, Proofpoint's strongest justifications for declaratory jurisdiction involve its potential liability for indirect

---

[6] The Court need not reach the issue of whether the Eastern District of Texas is the appropriate venue for InNova's claims, nor whether the Northern District of California would be the proper venue for Proofpoint's claims were it not for the pending Texas Action.

11

Case No.: 5:11-CV-02288-LHK
ORDER GRANTING MOTION TO DISMISS

infringement and pursuant to its alleged indemnification agreements.  Both issues turn on a finding of direct infringement in the Texas Action.  It is thus "sensible, more appropriate and more convenient to address the allegations in the Texas suit first." *Ours Tech., Inc.*, 645 F. Supp. 2d at 840.  Since the jurisdictional facts alleged place this action, at best, at the "outer bounds of declaratory jurisdiction," *id*., the Court declines to exercise jurisdiction over Proofpoint's claim for declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS InNova's motion to dismiss for lack of subject matter jurisdiction.  As noted, the Court believes that the Eastern District of Texas is currently the proper forum to entertain Proofpoint's claims.  However, as amendment may not be futile, dismissal is granted without prejudice.

**IT IS SO ORDERED.**

Dated: October 17, 2011

*Lucy H. Koh*
LUCY H. KOH
United States District Judge